SUPREME COURT. At Chambers. Before *Bacon*, Justice. Utica, May 9, 1860.

## THE PEOPLE *v.* HENRY BUDGE.

After an inquest, *super visum corporis*, has been held by a coroner, in case of sudden or violent death, and an inquisition has been found by the jury, a second inquest cannot be held by the coroner, unless the first inquisition shall have been vacated or set aside, or shall have been absolutely void.

Where, on a coroner's inquest, the jury found that the death was caused by suicide, and nearly four months afterwards the coroner summoned another jury, and held a second inquest, at which the jury found that the deceased was killed by H. B., whereupon the coroner issued a warrant of commitment, under which he was imprisoned, on *habeas corpus* the accused was discharged from imprisonment, on the ground that the second inquisition was not authorized by the statute.

The fifty-eighth section of the *habeas corpus* act (2 *R. S.*, 568), which provides that, though the commitment was irregular, the judge may require bail in a bailable case, if the prisoner appear to be guilty of the offence charged, was designed only to prevent the escape of a guilty person through a technical irregularity, and is not applicable to a case where two inquests have been held, and on the first a verdict of suicide was rendered, and on the second, which was unauthorized, the jury found that the deceased was killed by the prisoner.

ON a return to a writ of *habeas corpus*, before Justice Bacon, it appeared that the prisoner, who was the Rev. Henry Budge, of Lewis county, was held under a warrant of commitment

issued by Thomas Rogers, one of the coroners of Lewis county, under the following circumstances :

On the eleventh day of December last, Mrs. Budge, the wife of the prisoner, was found dead in bed, with her throat cut, and a bloody razor lying by her side. Coroner Rogers was at once notified, and an inquest was held by him on the same day. Several witnesses were examined, including the prisoner himself and his two children. That jury, composed of eleven citizens, rendered a verdict that Mrs. Budge died by her own hand. Nearly four months afterwards, on the ninth of April last, the same coroner summoned another jury, composed of seven men, and held another inquest, which resulted in a finding by the jury that the deceased was killed by the prisoner. The coroner then issued his warrant of commitment, under which the defendant was imprisoned.

*C. H. Doolittle* and *Ward Hunt*, for the prisoner, asked for an absolute discharge, on the ground that there having been one inquisition, not quashed, vacated or set aside, the coroner had no power to hold a second inquest, and had, therefore, obtained no jurisdiction over the person of the prisoner. The counsel contended that the statute of this State authorized no second inquest; that such statute was taken from the English statute, under which it had been decided in England that no second inquest could be held by a coroner, unless the first inquest had been set aside, citing 1 *R. L.*, 150; 2 *R. S.*, 743; *Impey on Coroners*, 3, 13; 2 *Bac. Abr.*, 427, 428; 2 *Hale P. C.*, § 59; 2 *Hawk.*, 52, 53; 1 *Salk. R.*, 190; 3 *Mod.*, 238; 1 *Burns' Jus.*, 360; 5 *Eng. Com. L. R.*, 277; 24 *Wend.*, 45. The counsel contended that there was an unbroken current of authority that a coroner can hold but one inquest *super visum corporis*, concerning the death of a person who had been slain or suddenly died, either by the common law or the English statutes, unless the first inquisition had been set aside or quashed, or was absolutely void. That the statute of this State, in the particular in question, was merely in affirmance of the common law, as had been held of the English statutes.

The People *v.* Budge.

The counsel further claimed that, in case the judge differed from him in opinion as to the right to hold the second inquest, the prisoner should be discharged on bail.

*Henry A. Foster*, for the prosecution, proceeded to contrast the powers of the coroner in England and in this State:

Here, the coroner does not hold a Court of Record, as in England. If he held a Court of Record, he could not be interfered with by *habeas corpus*. The case could only be reached by appeal or writ of error. In England, the finding of a coroner's jury is equivalent to a bill of indictment. Such is not the case in this country. Have our coroners jurisdiction in cases of wreck and treasure trover? Can the inquisition here forfeit to the State the goods and chattels of the murderer or the suicide, as in England to the king? Is the finding equivalent to a judgment against the widow and next of kin? There is great difference between the powers of the coroner in England and in this country. In the former, their inquisitions divest rights and vest rights. In the case of the suicide of the Earl of Essex, property to the value of a million of dollars passed by the finding of the jury.

The decisions cited are under the English statute, where coroners' inquests are something more than a preliminary investigation. In this country, it is a mere preliminary examination, and the coroner has no power except such as is conferred by statute. (*Crocker on Sheriffs*, 907; 4 *Chitty's Black.*, 190.)

If a magistrate held an examination, and decided to discharge a suspected party, could he not in a week afterwards issue another warrant, hold another examination *de novo*, and hold the same man to bail? Does the ignoring of a bill by one grand jury, prevent another grand jury from finding a bill? If a grand jury find a bill of indictment, may not the same jury find another indictment for the same offence, but in a different form, and will not the second indictment supersede the first?

The counsel on both sides discussed also the facts of the case at length, with a view to the question of bail, in case it should be held that the second inquest was not unauthorized.

BACON, J., reviewed briefly the arguments of the counsel, and the powers of Justices of the Supreme Court upon *habeas corpus*—that great writ of freedom, which was designed to protect the liberty of the citizen. He also alluded to the 58th section of the *habeas corpus* act, which had not been alluded to by the counsel. That section provided that if the person brought up on the writ appeared to be guilty of an offence, although his commitment be irregular, the judge shall hold the person to bail, if it be a bailable offence. This evidently contemplated a clear case of guilt, and was enacted to prevent the escape of a guilty person through a technical irregularity. It was sufficient to say that this was not a case of that kind. Here were two inquisitions before a coroner—the first held *super visum corporis*, not irregular or questionable in its form—wherein the jury of eleven men made and filed a verdict of suicide. Four months afterwards, a jury of seven men came to a conclusion of an opposite description—to the effect that there was cause to suspect the defendant of homicide. So far the case was balanced, and although he had an opinion which inquisition was entitled to the greatest weight, it was not necessary, for the purpose of the decision, to state that opinion. After some further comments upon the arguments of counsel, Judge B. announced his conclusions as follows:

Upon the whole case, I see no escape from the conclusion that if the committal by the coroner is unauthorized, the prisoner must be discharged; and that the committal is unauthorized, follows from the rule, perfectly well settled, that a second inquisition cannot be held until the first has been vacated, and a new inquiry ordered by the court.

Such is the rule unquestionably in England, as is conceded, and there is nothing to the contrary to be found by any authority in this country. No power is given to the coroner by our statute to hold a second inquisition, but by the strong-

The People *v.* Budge.

est implication there is to be but one inquisitiou, *super visum corporis*, and that is to be held "forthwith" on his receiving notice of the death, and being completed it is filed, and the whole proceeding is ended. "As to any original self-moving" power to do anything further in holding an inquest, the coroner is *functus officio*.

This being so, it is clear he has no power to act further on his own motion, and especially while the first inquisition stands. He cannot proceed on surmise or suspicion that some further discoveries may be made. Until the first inquisition is vacated by the action of some court, it is conclusive upon the coroner and all others.

There is no reported case to be found in this country where a second inquisition has been held, the first remaining undischarged, nor is any such practice known to, or recognized, or to be tolerated by the laws of this State. Such a practice would be liable to great abuse, and as the object of the proceeding is merely preliminary, the main purpose being to ascertain whether it is probable that a crime has been committed, and to preserve the evidence and examine the facts and circumstances while they are all fresh and easy of inspection, all the ends of the inquiry are answered by one inquisition, *super visum corporis*, and there is no question made that the first inquisition in this case was not fairly and legally conducted.

There is no danger of a failure of justice in this case if the defendant is discharged on this committal, as proceedings may be taken and an examination had before any magistrate in the county of Lewis, and the proceedings before the coroner form no sort of bar to such an examination, and an original proceeding may be taken to procure an indictment before the first grand jury that shall be impanneled in the county of Lewis. No apprehension is expressed by the counsel of the People, that the defendant will make any attempt to escape, and the opportunities for flight constantly presented to him since these proceedings commenced, and which he has declined to embrace, may be taken as conclusive proof that no such fear need be

indulged. But whatever speculations may be allowed on this point, it is important to the ends of justice and the safety of the community that inferior ministerial officers should be strictly confined to their legitimate functions, and not overstep those boundaries which the law has prescribed; and whenever this has been done, any court or magistrate having power to supervise the proceeding, fails of its duty if it does not, upon its authority being invoked, instantly interpose to correct an improper, even though it may perhaps be a well-intended, procedure.

The result is that the defendant must be and he is hereby discharged from custody on the warrant under which he now stands committed.

Prisoner discharged.

---

SUPREME COURT. Clinton General Term, May, 1860. *James, Rosekrans, Potter* and *Bockes*, Justices.